May it please the Court. My name is Mark Harris, and I represent Computer Sciences Corporation and DXC Technologies. The parties here agreed in their arbitration agreement that the arbitrator would not award consequential damages. They made it a limitation on his power, not merely a substantive rule about liability. Notwithstanding that limitation, the arbitrator awarded $55 million in damages, some $80 million, including interest, that were consequential as a matter of New York law. The magistrate, however, held that she could not independently review that issue, even if he awarded consequential damages. That decision was wrong. I have two main points to cover. First, under the FAA and established precedent of this Court, the Court should review the arbitration award independently, meaning without deference. That's what the parties actually agreed to. That's necessary to give meaning to their contract. That's what FAA Section 10A4 requires, which is to review to see whether or not the arbitrator exceeded his powers. Second, on independent review, each of those categories of damages were consequential as a matter of clear New York law and should be vacated. Let me begin with the first point, which is the review that the Court should prohibition on awarding consequential damages in the parties' agreement here was a limitation on his power. Again, not merely a rule about liability. It was a separate provision in a separate section of the contract, which is labeled as the parties' arbitration agreement. This, I hope this doesn't avert you too much. Let me ask you how this proceeded in front of the arbitrator. There's at least the argument in opposing counsel's that both parties sued their different interpretations in front of the arbitrator and arguing whether these were consequential damages or not. How did you object or did you to the arbitrator resolving this? So there was no issue, Your Honor, as to whether the arbitrator had the power to award consequential damages. Everybody agreed he did not. No, I'm talking about the categorization. To what extent do you object to or just did you preserve some sort of objection to his, whether that was within his authority or not, to make a final determination? Obviously, he had to make some determination in order to move forward, and that's how we review it is really the issue before us. So how was this issue presented to the jury that whatever was decided there was not really within his final authority to decide? In a couple of ways. First of all, we did, CSC did mention with regard to the statements of work orders that those were not properly before the arbitrator. That's acknowledged I'm sorry, say that again. That the statement of work orders, which was one category of the damages, we stated that those were not properly before the arbitrator. Kemper acknowledges that in their brief. But I think to go to your core point, Your Honor, we didn't need to because we had to argue that the arbitrator should award only direct damages. Damages were front and center, obviously, once we got through liability. The central question of the case was once liability was found, what should the damages be? We had to address when they argued for certain damages to say no, those are not direct. You only have the power to award direct damages. Those are not direct and therefore don't award them. The way Kemper wants to argue this is that it would have been a catch-22 for us. If we went ahead and argued that no, those are not direct and therefore they're not appropriate, then we're somehow conceding that the arbitrator had the final authority to decide them. On the other hand, if we didn't argue them and said no, well, you know, this is, we're not going to say anything about this, then at that point it would have been construed as a waiver. It can't be. What the Supreme Court has held in situations like this, take, for example, the first options case. What the Supreme Court held is in a situation where the parties, one of the parties is opposing an issue that is before the arbitrator, it's not understood that that is any kind of a concession that the arbitrator gets to decide that issue. In first options itself, the question was whether or not a certain part of the contract was arbitrable or not. And one of the parties said it's not arbitrable. And the Supreme Court, Justice Breyer, said that shouldn't be understood to mean that we're conceding somehow that the arbitrator should decide that issue. We're saying it's not arbitrable. Same thing here. We had to argue that these are not appropriate to award. Don't award direct damages. We had to argue that. That's not a concession that he had the final say over it. And it couldn't be. You've answered my question. That's all right. You can move on to where you were headed. I just wanted to know how this was presented. You have told me how it was presented. I don't need the argument as to why it was presented that way. Yes, Your Honor. Keep going. Yes, Your Honor. Thank you. Again, our position is that under the agreement itself, this was specified and it was understood by everybody. There's no contest, as I understand it, that this was a limitation on the arbitrator's power. The magistrate below found that. Kemper concedes it was a limitation on power. We obviously think the position is a limitation on power. Under Section 10A4 of the FAA, one of the express grounds for vacator of an arbitral award is that the arbitrator exceeded his powers. This is actually the core case. Most of the time, I think what the Court sees is parties coming before and they don't like the way an issue has been decided which was submitted to the Court, to the arbitrator. The arbitrator was asked to decide some issue. A party doesn't like the way it came out and says, well, you didn't decide it right. You didn't apply the facts. You didn't apply the law correctly. You didn't do your job right. And therefore, we're going to now claim that you exceeded your powers. And what this Court, all the courts say in that situation is you submitted the issue to the arbitrator. You can't complain that the arbitrator didn't do his job well. That's not this case. This is a case where we specifically in clear letters exempted an issue, a category of remedy, and said the arbitrator shall not issue this type of remedy. It's off the table. Now what we're saying is he went ahead and did that anyway. It's not an attack on the way he decided his — what was before him. It's not an attack on whether he applied the law correctly. The argument is that he decided he did something. He issued a remedial order of a type which was off the table. Can I — I'm not — I want to go back to the question that Judge Southwick asked you, because it sure sounds — the way it is presented to the arbitral tribunal looks like the category of cases you just described as being off the table in an FAA review. Because the way I understand CSC's post-hearing brief, you say, Section 3.4 of Addendum 1 only permits Kemper to claim direct damages. These are not direct damages. So there's no actual dispute about can the arbitrator describe — I'm sorry, award consequential damages. The only question is, are these expenditures  generally available by January 2nd, 2011? Arbitrator said, yes, those are direct. That's not consequential. They just disagreed with you on the question that — I'm sorry, with your client. They disagreed with what CSC argued was and was not a direct damage. So it seems like it's sort of the heartland of what the FAA — at least the way you've described the dichotomy. That's absolutely our position, Your Honor, is that this is the heartland of what 10A4 is about. Well, I'm sorry. I mean, it sounds the opposite, right, in the sense that the heartland says you can't just disagree with the way that the arbitrator categorized the damages, right? Well, we're not, Your Honor. What we're saying, again, is that he issued a type of order, a category of award that he doesn't have the power to issue. Let me — this Court has done this and does this frequently. This happened in the Bridest case. This happened in the Smith case, in the Delta Queen case. Those were all cases where the arbitrator issued a type of award. Let's take Delta Queen for a second. Delta Queen was a case where the issue was whether or not a certain worker had been discharged properly. And what the arbitrator did was say, well, I have remedial power here, so I'm going to decide that the employee should be reinstated. And what the Court said was — this Court said was, no, where the arbitrator exceeds — these are the words of the Court — where the arbitrator exceeds the expressed limitations of his contractual mandate, judicial deference is at an end. What the Court did was say that remedy was taken off the table. In fact, it's a little bit more complicated. What the Court really said was, given the findings that the arbitrator had already come to, namely that this employee exercised gross carelessness, then this remedy is off the table. That's what the Court did. It — it reviewed — it reviewed the remedy. Same thing happened in Bridest. In Bridest, the Court reviewed whether or not independently punitive damages had been awarded, because the parties took punitive damages off the table. And really, this — going back to first principles, this — this has to be the way that it works, because as the Supreme Court has said and this Court has said many times, arbitration is a matter of consent. It's not a matter of coercion. The parties have the power to decide what matters the arbitrator will take up, what — who the arbitrator will be, how the arbitrator will — what the rules are of the arbitration, who they'll arbitrate with. And remedies are a core example of that. Which remedies, which type of remedies are acceptable and are not acceptable, that's what the parties did. To give meaning to their contract, to give meaning to Section 9.3, the only way to do it is to say that the — that the Court — that it was left for the Court to judge whether or not their reward complied — the reward the arbitrator did comply — gave complied with what the parties asked for. Otherwise, that provision of 9.3 is surplusage. And I think Kemper doesn't have an explanation of what the difference is between Section 9.3 and Section 7.2.2, which was the substantive liability provision. Their version of the world here is that they say what happened was the parties agreed that the arbitrator should not award consequential damages, and there would be review by the courts only in the situation where the arbitrator awarded consequential damages anyway, labeled them as consequential, basically said, I don't care what this contract says, I'm going to do it anyway. That's their position. That's explicitly their position. Again, their position is that the arbitrator would have to find that they're consequential and then go ahead and award them. That is not a plausible interpretation of what the parties did here at all. It's — it's not plausible that the — that they would include this provision in 9.3, which is the core provision of the arbitration agreement, exempting consequential damages, punitive damages, all for a situation where the arbitrator just defies what his — what the rules are that apply to him. It doesn't make any sense. And I don't have an answer for that. Going back to the — to the cases, in each of the cases that I mentioned, in Bridas, in Smith, in Delta Queen, what the Court did was the Court said, where this — we have to examine for ourselves where there is a restriction or a limitation on arbitral authority. We have to decide then whether or not that limitation was violated. It can't be that the arbitrator gets to decide for himself whether or not — where they took the power away from him, whether or not he complied with the rules of the contract. That's what happened, again, for example, in the Smith case. That's the — that's this Court's 2004 decision. In that case, the arbitral panels interpreted the contract and interpreted the contract to say that they were allowed to modify their award within 30 days. It was an interpretation of the contract. That's how they viewed it. This Court said, you don't have that power. The Court looked at — looked at the contract for itself and said — again, these are the words of the Court — we view the real question as one for the courts, since it involves the question of the arbitrator's authority, where it goes to authority and not simply to application of something that is already within their authority. But where there's a carve-out from authority, the Court can't simply defer. Let me turn — let me turn briefly, in the time I have left, to the — the arguments about the categories of damages themselves. It's quite telling here — and I don't think there's really an argument on the other side — that each of these categories of damages were, in fact, consequential and not direct. The first category is obviously the easiest to see. Kemper's internal costs and salaries they paid to their own employees. It's almost a quintessential case of what is consequential damages, because consequential — direct damages are defined under New York law as being the damages that are associated with the naked performance by the — by one of the sides. And the measure of that in a services contract is how much was paid. So, in other words, as of 2000 — January 2, 2011, which was the date that the arbitrator found the breach occurred, CSC was supposed to produce a software product, and the measure of the damage that was associated with not doing that was how much Kemper paid for a product that the arbitrator found they never got. It can't be that the costs, whatever they paid to their employees — it cannot be that those are direct costs. Those are, again, almost by definition what consequential costs are. The arbitrator gave really no reasons why he called those consequential. He said, I looked at the law, and this is what it is. That's clearly what the parties meant to do when they said, we're telling the arbitrator you don't have the power to go issue that type of award. The second category was a category concerning damages after January 2, 2011. Again, for the same reason, those can't be direct damages. The courts in New York — I believe the Texas courts actually hold the same way — is that direct damages are measured by the moment of the breach. After the breach, than anything else, it may be recoverable in ordinary kind of case where there's no limitation on consequential damages, but they're clearly not direct. Any of the payments that were made after that obviously couldn't have been the measure of how much was paid by the deadline to produce the product. And the last group of damages were damages that were associated with a different contract for statements of work orders, which Kemper agrees were basically equivalent of other contracts. None of those categories could be described as being direct damages. They weren't. The court should give meaning to the contract that the parties provided for and vacate those damages. Good morning, Your Honors. May it please the Court, Rob Hockman for Kemper. Judge Oldham, I'm going to try and explain why your frame is exactly right. And it has to do with the understanding of the difference between a question that is put to an arbitrator and living with the answer. And what happened here was the parties, and this is agreed, this is all over their reply brief, everybody agrees that the arbitrator had to answer the question, how should we characterize these three categories of damages? The same question they want you to answer has already been answered by the arbitrator. It was submitted to the arbitrator, and he had to do it, had to answer it pursuant to the terms of the contract in order to do his job under the agreement. He had to answer it because the parties vigorously litigated the question in front of him. And so the question is, what happens when the arbitrator issues the answer? Their view, their view is that you can get de novo review depending on the answer. And I want this to be absolutely clear. If the arbitrator had agreed with them about the answer, we wouldn't, we couldn't be here arguing de novo review. So their position is, depending on the answer to a question submitted to the arbitrator, review changes. And that would be a revolution in arbitration law. Basically from its inception, the one principle that has always been in place is that when the parties agree to submit a question to the arbitrator, they live with it. You can't square their position with Oxford Health, which says you live with it whether the decision is good, bad, or ugly. You live with it whether there's grave error. You can't square their position even if you take seriously their view that somehow everything changes because the limitation on awarding consequential damages appears in Section 9 instead of just in Section 7. You know, it cross-references Section 7 and Section 9. Even if you take that seriously, there's some difference intended there. I don't. You can't square it with Hall Street, 2008 decision of the Supreme Court, which said in no uncertain terms when the parties submit a question to the arbitrator, they're stuck with that result, subject only to the very, very limited review provided by the FAA, and they cannot agree by contract to a different standard of review. What they're saying is that the parties here did agree to do that. In fact, we know that they tried to agree to do that. It's actually just a couple of clauses away from the very provision they're relying on here. And that's void as a matter of law. So they're really asking you dramatically to unravel basic arbitration law, and they're doing it through a very familiar sleight of hand. So suppose we agree that the FAA prohibits this de novo relitigation of the questions properly submitted to the arbitrator. I'm looking again at this. This is CSC's post-hearing briefs. This is what is submitted to the arbitrator after the finding of liability. That's their position. And so that's what they've submitted to the arbitrator and what presumably, if we agree with you on the first point, the FAA would prohibit us from deciding de novo or otherwise allowing relitigation of in Federal court. Is there any amount of the $55 million that the arbitrator awarded that does not constitute amounts spent by Kemper internally on the implementation project? Well, I mean, amounts there is both salaries and there's a small portion of that that are capital expenditures. And if you'd like, I'm happy to shift to the New York law questions here because I think we're — I want to return before my time is up to the Fifth Circuit cases on this that they discussed. But just to make clear, first of all, the arbitrator got this right. You don't have to decide it. You shouldn't look into it. But if you do want to look at New York law, because remember, even if you got New York law wrong, errors of law are not reviewed by a Federal court. But go ahead and look at Biotronic. It's a New York court of appeals case. It's 2014. We cited it in our brief. They didn't say anything about it in the reply. And what that decision demonstrates is that they have New York law wrong. Consequence — when parties write the word no consequential damages into an agreement, they're not — they're not adopting some hornbook definition that absolutely applies. They just pull it off the shelf and insert it into the contract. What that decision demonstrates is that New York courts are supposed to look at the agreement, understand the parties' arrangement, and read that contract — read that term, consequential damages, in light of the — in light of the arrangement. And in that case, the New York court of appeals determined that lost profits can be, under appropriate circumstances and the circumstances that prevailed in that case, can be outside the scope and hence recoverable of a bar on consequential damages, and if anything, as hornbook law, consequential damages, it's lost profits. Right? So it's much more flexible than they make it seem. And the arbitrator understood that. And the arbitrator also understood this agreement much better than CSC does. The agreement wasn't just, hey, go hire somebody, update our software, give us our new software, and we go about our business. This was a collaborative venture. They were going — we were going to spend a huge amount of money, spend a lot of resources. They were going to — we were going to be paying them a huge amount of money. And they were going to update — not just update our software, but they were going to create a whole new software system that was going to be marketable industry-wide. And the parties were going to share in the royalties from that. And Kemper says, hey, we're not a software company. That's pretty hard to do. We know it's hard to do. But if we're going to put a lot of money into this and you're not going deliver, we want protection. That's section 3.4 of the addendum. And what section 3.4 of the addendum says is if we do that — and this is exactly what the arbitrator gave us — if we do that, we put in money into this project that's going to be marketable industry-wide and you don't deliver, we get our money back. It's really that simple. What could be more direct than we get our money back? One category of our money back is money we paid to CSC. That's what it says. We'll be entitled to all payments pursuant to the agreement, but without any limitation on when such payments were made. So much for after January 2011, because it's right there in the contract. That's what the arbitrator determined. Two, what else? We get all additional proven direct damages. Additional is actually kind of an important word there. Payments to CSC is one kind of direct damages. And payments that we made to our employees for the same project. And this was all meticulously accounted for. That's all we're getting. We're just getting the money back. We paid some of it to CSC. We paid some of it to our employees. But it was all flushed essentially away by CSC's breach. And then finally there's the statements of work 3, 5, and 6, which they say are outside the scope of this agreement. That's what you heard today. That's the one thing they claim to have objected to, except it's their own — it 3649 of the record — that those work orders were, quote, in furtherance of the XSEED project. In other words, it was work done to help implement, to develop billing software, test it, and implement it. So this was all payments that were made by us in furtherance of this collaborative venture that we were entitled to recover. Just get our money back. And what could be more direct than that? That's the New York law issue. Now, I don't think your opinion should touch any of that, quite honestly. And I want to return to the cases, right? So all of the cases that they rely on, Delta, Queen, and Smith, they're all about questions, right? Smith can't — it doesn't matter who the amendment to the arbitration award favored. It's not like if one side wins and the other side loses, then it's review de novo. It's the question, may I, beyond three days, amend this award? Yes. The arbitrator's — that was beyond the arbitrator's power because the agreement barred it. Here, everybody agrees the question, what are these damages? Are they direct and hence recoverable? Are they consequential? And not. It was before the arbitrator. Delta, Queen, that was the case about discipline after good cause was found. The arbitrator had the authority to determine whether there was good cause. But when it came to discipline, he went too far because that was specifically reserved to the employer. It doesn't matter what he said. He could have agreed with the employer. He wasn't supposed to speak to it at all. That's what barred it. And their reading of Bridus is rather remarkable because Bridus is exactly the opposite. Bridus shows that this trick has been tried over and over again, and it doesn't work. Because in apply to an award. And the party, and the party that was subject to the discount, to the onerous discount rate, first, they made two arguments. First, they made a traditional one. Under the general standards for arbitration review, they said this was manifest disregard of the law. That was understood by this Court at that time to be general arbitration review. It's not anymore, but that's neither here nor there. And the Court said no, it's not a punitive damages provision. And they say, okay, well, the party comes back and says, well, then it exceeds authority. So review it, Daniel, because it's punitive. And the Court says this. The Court says, first of all, there's no express punitive damages provision here, so it's not an exceeds authority. And so at the very end of the opinion, no express punitive damages award and no manifest disregard. They don't let them change the standard of review. That's what this Court did. You don't get to change it just by recasting the argument. And all of this really spins off kind of a play on the word power. They say that we agree that the arbitrator lacked the power to award consequential damages. The contract did not authorize him to award consequential damages. But the arbitrator had the power to characterize the damages that we claimed as direct. They don't like the answer. And that's it. And if the — if this Court has no further questions, we respectfully request that you affirm the judgment. Thank you, Your Honor. Your Honor, I think what I'm hearing from Kemper is that there's no way to have a damages limitation on power. There's no way to do it. Because what happens is if the parties say the arbitrator will not award — will not award — the contract says don't award consequential damages, and then the parties say, okay, we want to make sure that that never happens, we're going to take consequential damages off the table, which is what they did in 9.3. They can't do it. In other words, they're stuck. There's no way for them to decide, as they would with which issues to give to the arbitrator, they can't decide which outputs the arbitrator can come up with. There's no way to do it. Their view of the world is that the two different provisions, 9.3 and 7.2.2, mean the same thing. One is surplusage. It can't be. This Court has never, ever held before, in a situation where there's a limitation on power, this Court has never held that you review it deferentially. The Court's never held that. They don't have any cases that say that. In a — power, it's also the first time I'm hearing power, you know, this is some kind of made-up distinction. Power is about as basic as it gets. The parties have the ability to decide what matters are put before the arbitrator and what the output should look like. If they want to take consequential damages off the table, if they want to take punitive damages off this table and say those won't get awarded, not just what the arbitrator calls consequential or calls punitive, but we don't want there to be punitive damages. We don't want that to ever happen. They can't do that, apparently. They can't tell the arbitrator what limitations on the output on his award he should — he should enforce. There's no way to do that. That's a pretty remarkable proposition. It's — the Court has never said that before, and this contract certainly doesn't say anything like that. So their other argument is that somehow, well, maybe you could do it, but we essentially waived that. Again, the contract said no power. They agreed. They used the words themselves, no power. But we sort of gave that up when we participated in the arbitration. Again, that's a catch-22 that can't be right. By participating in the arbitration, the damages phase, what were we supposed to do? They say you sort of run to court. The minute that they started arguing to the arbitrator, we want you to go impose and award these internal costs, these internal salaries, we should have gone to court then and said, oh, stop what's happening in that room down the street. That's — that's madness. That can't be right. The definition of — if you look at 10A4, it says exceeding powers. The premise of exceeding powers is that you get review when the arbitrator has done something which exceeded his powers. He did something first, and then you go to court and say, no, he didn't have the power to do that. It's always a situation where the arbitrator acted first, did something he wasn't authorized to do, and then you go protest it. And there's no argument, well, you shouldn't have participated. You should have just left the room. You can't leave the room. If you leave the room, they for sure would have argued, but we had waived — we had waived the issue. Kennedy. Kennedy. Counsel, I'm no doubt looking at this too simplistically, but when we're talking about power, it seems like both sides agree he had the power, the arbitration had the very purpose of categorizing damages and deciding how much should be awarded, and that's exactly what the arbitrator did. So it seems to me whether it was done consistently or inconsistently with one-size interpretation of consequential damages or not, it still was in his power, and indeed his obligation, to assess the category of damages. So why isn't that — I forget, it was Wilhouse or something else that you and my friend to my left were talking about — why isn't that exactly what arbitrators have the authority to do? And he did it, and here we are under the normal review, not that he exceeded his power, but maybe he used it in — with legal conclusions that were improper or some other basis, but still within his power.  I think that what he said to him was a power to award direct damages. That's what it said. He had the power to award direct damages. It said he did not have the power to award consequential damages. He may have had internally, in order to work out what was direct damages, he may have had to come to his own view about what was direct and what was consequential. We did not say to him, please go classify damages. That was never submitted to him. They took the position, these damages are direct. We took the position, no, they're not. Don't award them. They think now that what we effectively conceded was, and if he goes ahead and awards something which really is consequential, we're stuck with that. That can't be what we did. Why would we have given that up? It doesn't make any sense. That's not what the parties agreed to. To enforce the agreement of the parties, the Court should vacate these damages. Thank you, Your Honors. The Court will take a brief recess before hearing the next case.